**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
CAUSE OF ACTION INSTITUTE,                    )
                                              )
            Plaintiff,                        )
                                              )
      v.                                      )        No. 1:18-cv-2373-ABJ
                                              )
UNITED STATES                                 )
DEPARTMENT OF JUSTICE,                        )
                                              )
            Defendant.                        )
_____)

**PLAINTIFF CAUSE OF ACTION INSTITUTE'S OPPOSITION TO
DEFENDANT DEPARTMENT OF JUSTICE'S MOTION FOR SUMMARY
JUDGEMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56 and Local Civil Rule 7, Plaintiff

Cause of Action Institute opposes Defendant Department of Justice's motion for

summary judgment, ECF No. 19, and cross-moves for summary judgment.

R. James Valvo, III (D.C. Bar No. 1017390)
Ryan P. Mulvey (D.C. Bar No. 1024362)
Lee A. Steven (DC Bar. No. 468543)
CAUSE OF ACTION INSTITUTE
1875 Eye St., NW, Suite 800
Washington, DC 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
james.valvo@causeofaction.org
ryan.mulvey@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff*

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

FACTUAL AND LEGAL BACKGROUND ............................................................ 2

   I.   THE DOJ GUIDANCE AND PATTERN OF SEGMENTING RECORDS ......................... 2

   II.   THE ADMINISTRATIVE HISTORY OF FOIA REQUEST OLA/14-1096 ................... 5

   III.   THE PROCEDURAL HISTORY OF THIS LAWSUIT ................................................ 6

STANDARD OF REVIEW AND REMEDIAL AUTHORITY ......................................... 7

ARGUMENT ..................................................................................................... 9

   I.   THE DOJ GUIDANCE DEFINING A "RECORD" VIOLATES THE FOIA ...................... 9

      A.   Courts review the DOJ definition of a "record" *de novo* ........................... 10

      B.   The term "record" is adequately defined in the FOIA's
          statutory text and Supreme Court precedent ............................................ 13

      C.   The DOJ guidance is untenable because a record must pre-exist
          a request ......................................................................................... 17

      D.   The DOJ guidance will impair CoA Institute's lawful access to
          records in the future ........................................................................ 25

   II.   THE DOJ'S SEGMENTATION OF QFRS INTO MULTIPLE "RECORDS"
      VIOLATES THE FOIA BECAUSE EACH LETTER AND ITS ATTACHMENTS
      ARE A SINGLE RECORD ...................................................................... 26

      A.   The DOJ produced four records to CoA Institute ..................................... 26

      B.   Applying the FOIA's definition of a record to each letter and its
          attachment shows that each letter is a record because the DOJ
          maintains them as one unit. ............................................................... 28

      C.   The DOJ's administrability concerns are misplaced and irrelevant ........ 33

CONCLUSION AND RELIEF SOUGHT ............................................................. 36

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Al-Fayed v. Central Intelligence Agency,*
    254 F.3d 300 (D.C. Cir. 2001) ............................................................. 11

*American Center for Law & Justice v. Department of State,*
    289 F. Supp. 3d 81 (D.D.C. 2018) .......................................................... 8

*American Civil Liberties Union v. Central Intelligence Agency,*
    823 F.3d 655 (D.C. Cir. 2016) ............................................................... 22

*American Immigration Lawyers Ass'n v.*
*Executive Office for Immigration Review,*
    830 F.3d 667, 677 (D.C. Cir. 2016)..................................................*passim*

*American Oversight v. Department of Health & Human Services,*
    No. 17-1448, 2019 WL 1430429 (D.D.C. Mar. 30, 2019)............................ 3, 18, 32

*Bureau of National Affairs, Inc. v. Department of Justice,*
    742 F.2d 1484 (D.C. Cir. 1984)............................................................. 9, 21

*Burka v. Department of Health & Human Services,*
    87 F.3d 508 (D.C. Cir. 1996) ............................................................... 21

*Campbell v. Department of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ............................................................... 12

*Cause of Action v. Federal Trade Commission,*
    799 F.3d 1108 (D.C. Cir. 2015)............................................................ 11, 13

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ........................................................................ 10, 11

*Citizens for Responsibility & Ethics in Washington v. Department of Justice,*
    846 F.3d 1235 (D.C. Cir. 2017)............................................................ 8, 25

*Department of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) ........................................................................ 9, 15, 21

*Duncan v. Walker,*
    533 U.S. 167 (2001) ........................................................................ 19

*Food & Drug Administration v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ........................................................................ 19

*Forsham v. Harris,*
   445 U.S. 169 (1980) ........................................................................ 9, 25

*Gatore v. Department of Homeland Security,*
   No. 15-459, 2017 WL 10777326 (D.D.C. June 27, 2017)...................... 4, 17, 29, 32

*Goland v. Central Intelligence Agency,*
   607 F.2d 339 (D.C. Cir. 1978) ........................................................ 9, 16

*Huffman v. Western Nuclear, Inc.,*
   486 U.S. 663 (1988) ........................................................................ 8

*Judge Rotenberg Educational Center, Inc. v. Food & Drug Administration,*
   No. 17-2092, 2019 WL 1296957 (D.D.C. Mar. 21, 2019) ................................... 3, 29

*Judicial Watch, Inc. v. Department of Commerce,*
   583 F.3d 871 (D.C. Cir. 2009) ................................................................ 17

*Judicial Watch, Inc. v. United States Secret Service,*
   726 F.3d 208 (D.C. Cir. 2013) ................................................................ 21

*Kissinger v. Reporters Committee for Freedom of the Press,*
   445 U.S. 136 (1980) ........................................................................ 16

*Lamie v. United States Trustee,*
   540 U.S. 526 (2004) ........................................................................ 15

*Lipton v. Environmental Protection Agency,*
   316 F. Supp. 3d 245 (D.D.C. 2018) ...................................................... 12

*Military Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) .............................................................. 7

*Missouri Coalition for the Environment v. Army Corps of Engineers,*
   No. 18-663, 2019 WL 1411063 (D.D.C. Mar. 28, 2019) ............................. 9

*Multi Ag Media LLC v. Department of Agriculture,*
   515 F.3d 1224 (D.C. Cir. 2008)............................................................. 7

*National Security Counselors v. Central Intelligence Agency,*
   898 F. Supp. 2d 233 (D.D.C. 2012) ...................................................... 8, 9

*New York Times Co. v. National Aeronautics & Space Administration,*
   920 F.2d 1002 (D.C. Cir. 1990)............................................................. 15

*Paisley v. Central Intelligence Agency,*
   712 F.2d 686 (D.C. Cir. 1983) ........................................................ 22, 23

*Parker v. Department of Justice*,
    278 F. Supp. 3d 446 (D.D.C. 2017) .................................................. 4, 29

*Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ........................................................ 8, 10

*Reporters Committee for Freedom of the Press v. Department of Justice*,
    816 F.2d 730 (D.C. Cir. 1987) ............................................................. 11

*Save the Dolphins v. Department of Commerce*,
    404 F. Supp. 407 (N.D. Cal. 1975) ..................................................... 15

*Schoenman v. Federal Bureau of Investigation*,
    575 F. Supp. 2d 136 (D.D.C. 2008) ...................................................... 8

*Shapiro v. Central Intelligence Agency*,
    247 F. Supp. 3d 53 (D.D.C. 2017) ........................................... 3, 13, 18

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................................ 11

*Tax Analysts v. Internal Revenue Service*,
    117 F.3d 607 (D.C. Cir. 1997) ................................................ 11, 12, 18

*United We Stand America, Inc. v. Internal Revenue Service*,
    359 F.3d 595 (D.C. Cir. 2004) ............................................................ 22

**Statutes**

5 U.S.C. § 551 ................................................................................ 13, 14

5 U.S.C. § 552(a)(2) ........................................................................ 20, 24

5 U.S.C. § 552(a)(3) .............................................................................. 24

5 U.S.C. § 552(a)(4) .................................................................... 7, 12, 19

5 U.S.C. § 552(e) ................................................................................... 19

5 U.S.C. § 552(f) .................................................................................... 13

5 U.S.C. § 552(f)(1) ............................................................................... 13

5 U.S.C. § 552(f)(2) ......................................................................... 13, 15

5 U.S.C. § 552a(a) ................................................................................... 4

44 U.S.C. § 2201 .................................................................................... 23

44 U.S.C § 3301(b) ..................................................... 11

Electronic Freedom of Information Act Amendments of 1996,
Pub. L. 104-123, 110 Stat. 3048 ............................................. 16

## Regulations

32 C.F.R. § 1900.002(n) ............................................... 12

## Administrative Materials

Department of Justice Handbook for Agency Annual
Freedom of Information Act Reports (Oct. 4, 2018) .............................. 20

*The Importance of Good Communication with FOIA Requesters*,
Office of Information Policy, Department of Justice,
http://bit.ly/2IGW2dF. .............................................. 34

Internal Revenue Manual § 35.5.4.9 .................................... 22, 23

## Rules

Federal Rule of Civil Procedure 56 ............................................. 7

## Other Authorities

Aristotle, *Metaphysics* (350 BC) ..................................... 18

*Became*, Merriam-Webster, http://bit.ly/2Uiw1DN. ................................. 18

Senate Report 104-272 (1996) ..................................... 16

## INTRODUCTION

What is a record?   This deceptively simple question has dogged administration of the Freedom of Information Act ("FOIA") for years.   This case provides the opportunity to answer that question.   Reading the FOIA's text together with Supreme Court precedent shows that a record is (1) any informational material, (2) created or obtained by an agency, (3) in the control of an agency when a request is made, and (4) in the format that the agency maintains that material at the time of the request.

This case comes in the aftermath of the D.C. Circuit's decision in *American Immigration Lawyers Association v. Executive Office for Immigration Review* ("*AILA*"), which held that an agency may not redact information within a responsive record just because the subject matter of that information is "non-responsive" to the request.   Instead, an agency must disclose a responsive record in its entirety as a unit, subject only to nine statutory exemptions.   As it expressly recognized, the *AILA* court had no cause to address the definition of a record—but it did so anyway. The district courts have begun to apply that dicta and are finding it unworkable.

In response to *AILA*, Defendant Department of Justice ("DOJ") issued guidance that purports to define a record under the FOIA; that definition, however, does not adhere to the FOIA's statutory text or relevant precedent.   The DOJ also has continued to segment records to withhold information, contrary to *AILA*.

Here, the DOJ identified three letters between DOJ officials and members of Congress that were responsive to Plaintiff Cause of Action Institute's ("CoA Institute") FOIA request.   Each of those letters enclosed and incorporated by

reference either questions for the record ("QFRs") submitted by members of Congress or DOJ responses to such QFRs.  Instead of producing each of those letters and its attachment as a unit, however, the DOJ applied its guidance and segmented the attachments into smaller "records," many of which it then withheld from CoA Institute as "non-responsive."

This case presents two issues.  First, does the DOJ guidance defining a record violate the FOIA?  Second, did the DOJ violate the FOIA when relied on that guidance to segment unitary documents into smaller "records" and then to withhold many of those "records" as non-responsive?  The answer to both questions is yes.

FACTUAL AND LEGAL BACKGROUND

## I.      The DOJ Guidance and Pattern of Segmenting Records

The DOJ has a history of finding creative ways to withhold information it finds "non-responsive" from requesters. It used to withhold this information by applying exemption-like redactions labeled "non-responsive" to excise information from within records.  *See, e.g.*, Decl. of R. James Valvo, III ¶ 20; Valvo Decl. Ex. 1.

In 2016, the D.C. Circuit found that practice unlawful because the FOIA "statute does not provide for . . . redacting nonexempt information within responsive records."  *AILA*, 830 F.3d 667, 677 (D.C. Cir. 2016).  The *AILA* court held that "the statute compels disclosure of the responsive record—i.e., as a unit—except insofar as the agency may redact information falling within a statutory exemption."  *Id*. Importantly, the *AILA* court acknowledged that "the parties [had] not addressed the antecedent question of what constitutes a distinct 'record' for FOIA purposes," and

that the court had "no cause to examine the issue." *Id*. at 678.   The D.C. Circuit then, only "for that purposes of [that] case," relied on the agency's "own understanding of what constitutes a responsive 'record,' as indicated by its disclosures in response to AILA's request." *Id*.

Unfortunately, the D.C. Circuit did not stop there and went on to include dicta on the issue.   The *AILA* court opined that "agencies . . . in effect define a 'record' when they undertake the process of identifying records that are responsive to a request." *Id*.   Although that conclusion was plausible under the facts in that case, it is legally incorrect as a principle to be applied in all FOIA cases, for the reasons discussed below.   But the *AILA* court did try to limit the reach of that dicta by stating that it found "it difficult to believe that any reasonable understanding of a 'record' would permit withholding an individual sentence within a paragraph within an email on the ground that the sentence alone could be conceived of as a distinct, nonresponsive 'record.'" *Id*. at 679.

Although a few district court opinions have relied on the *AILA* dicta to allow agencies to segment responsive records, *see Shapiro v. Cent. Intelligence Agency*, 247 F. Supp. 3d 53, 74–75 (D.D.C. 2017), most district courts, including this one, have begun to recognize the need to limit it.   *See Am. Oversight v. Dep't of Health & Human Servs.*, No. 17-1448, 2019 WL 1430429, at *3 (D.D.C. Mar. 30, 2019) (refusing to allow agency to segment an email chain into multiple records); *Judge Rotenberng Educ. Ctr., Inc. v. Food & Drug Admin.*, No. 17-2092, 2019 WL 1296957, at *7 (D.D.C. Mar. 21, 2019) (refusing to allow agency "midway through litigation"

to redefine "collections of information that had been treated as one agency record as multiple agency records"); *Parker v. Dep't of Justice*, 278 F. Supp. 3d 446, 451–52 (D.D.C. 2017) (refusing to allow agency to segment a letter from its attachment); *Gatore v. Dep't of Homeland Sec.*, No. 15-459, 2017 WL 10777326, at *2 (D.D.C. June 27, 2017) (finding "specious the [agency's] assertion that the entire FOIA Processing Guide is not itself 'a single discrete record'").

Unfortunately, instead of following *AILA*, the DOJ has continued to redact information within responsive records, now under the label "non-responsive records" instead of merely "non-responsive." *See, e.g.*, Pl.'s Statement of Undisputed Material Facts ¶¶ 18–21 [hereinafter Pl.'s SUMF]; *compare* Valvo Decl. Ex. 1, *with* Compl. Ex. 9 (DOJ re-producing the same email chain with "non-responsive" redactions re-labeled "non-responsive record").

In an effort to defend its continued evasion of the FOIA's requirements, the DOJ issued guidance interpreting the *AILA* decision and advising DOJ components and other agencies to apply the Privacy Act's definition of a record when processing FOIA requests.   Pl.'s SUMF ¶¶ 13–14; Compl. Ex. 6 at 2 [hereinafter DOJ Guidance].   The Privacy Act defines a record, in part, as an "item, collection, or grouping of information[.]"  5 U.S.C. § 552a(a)(4).  The DOJ seized on this language to contend that a record under the FOIA could be "an entire document, a single page of a multipage document, or an individual paragraph of a document" or "an entire string of emails, a single email within a string of emails, or a paragraph within a single email[.]"  DOJ Guidance at 2.  The guidance also claims that the "nature of a

FOIA 'record' is defined by both the content of a document *and* the subject of the request." *Id.*

Here, the DOJ relied on its guidance to segment records responsive to CoA Institute's FOIA request and unlawfully withhold information.   *See* Def.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ¶ 21 [hereinafter Def.'s SUMF] (admitting the DOJ applied its guidance).

## II.   The Administrative History of FOIA Request OLA/14-1096

In December 2013, CoA Institute sent a FOIA request to the DOJ Office of Information Policy ("OIP") seeking documents related to Executive Order 13457 and communications between officials related to the agency's decisions to obligate or expend funds.  Pl.'s SUMF ¶ 1.  In February 2014, OIP acknowledged receipt of the request and assigned it tracking numbers, including OLA/14-1096.  *Id.* ¶ 2.

Over the past few years, OIP produced many documents responsive to various parts of the request from various DOJ components.  *Id.* ¶ 3.  In January 2018, on behalf of the DOJ Office of Legislative Affairs, OIP sent a final determination letter on the portion of the request that it had designated OLA/14-1096.  *Id.* ¶ 4.  The letter summarized that in April 2016, CoA Institute and OIP agreed the request covered "communications between a [DOJ] political appointee and Members of Congress, their staff, or employees of the White House relating to grants of the Office of Justice Programs, Office on Violence Against Women, and Community Oriented Policing Services" and "records relating to Executive Order 13457." *Id.* ¶ 5.

The letter stated that OIP and the Office of Legislative Affairs had "located 143 pages that contain records that are responsive to [the] request." *Id.* ¶ 6. Although OIP claimed that it released thirty-two of those pages "without excisions," eleven pages bore redactions labeled "Non-Responsive Record" and OIP excised a significant amount of information from those pages. *Id.* ¶ 7. OIP also withheld at least seventy-one pages in full under Exemption 5, referred thirty-nine pages to other DOJ components, and redacted information under Exemption 6. *Id.* ¶ 8. OIP referred to the volume of the release by using the number of pages rather than the number of records. But an examination of the materials produced reveals that OIP released four records, although incompletely. *Id.* ¶ 9.

CoA Institute filed an administrative appeal with OIP that contested the withholding of information in Records 2, 3, and 4. *Id.* ¶ 10. In that appeal, CoA Institute argued that Records 2, 3, and 4 each constitute a single record and that OIP improperly segmented those records into multiple smaller "records" and improperly withheld information within the responsive records. *Id.* OIP denied the appeal. *Id.* ¶ 11.

## III.   THE PROCEDURAL HISTORY OF THIS LAWSUIT

In October 2018, CoA Institute filed this lawsuit raising two claims. *First*, that the DOJ improperly segmented records responsive to FOIA request OLA/14-1096 into what it claims are multiple smaller "records" and improperly withheld information. Compl. ¶¶ 34–44. *Second*, that the DOJ guidance titled "Defining a 'Record' Under the FOIA" violates the FOIA, and that the DOJ has a policy or

practice of relying on that guidance to improperly withhold information.  *Id.* ¶¶ 45–54.  The DOJ answered the complaint, denying both claims.  *See* Answer, ECF No. 12.  Following a stay in the briefing schedule because of a lapse in government appropriations, the DOJ moved for summary judgment on April 5, 2019.  *See* Def.'s Mot. for Summ. J. & Def.'s Statement of Points & Authorities in Supp. of its Mot. for Summ. J. [hereinafter Def.'s Mot.], ECF No. 19.[1]  CoA Institute now opposes and cross-moves for summary judgment.

## STANDARD OF REVIEW AND REMEDIAL AUTHORITY

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA case, "the burden is on the agency to sustain its action[.]"  5 U.S.C. § 552(a)(4)(B).  And a district court must determine *de novo* "'whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure[.]'"  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted).

An agency may meet its burden by supplying affidavits that "describe the documents and the justifications for nondisclosure with reasonably specific detail" that is "not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see* 5 U.S.C. § 552(a)(4)(B).  A district court should analyze "all underlying

---

[1] In addition to moving for summary judgment, the DOJ re-produced a few pages it had produced to CoA Institute at the administrative level, but with a couple of redactions removed.  That re-production does not affect the issues here.

facts and inferences . . . in the light most favorable to the FOIA requester." *Schoenman v. Fed. Bureau of Investigation*, 575 F. Supp. 2d 136, 148 (D.D.C. 2008) (citation omitted).  If both parties move for summary judgment, each motion must stand on its own.  *See Huffman v. W. Nuclear, Inc.*, 486 U.S. 663, 664 n.11 (1988).

The "FOIA imposes no limits on courts' equitable powers in enforcing its terms."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Those equitable powers extend to resolving policy-or-practice claims where "(1) the agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA'; and (2) the plaintiff will 'suffer "continuing injury due to this practice.""'  *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 898 F. Supp. 2d 233, 253 (D.D.C. 2012) (citing *Payne Enters.*, 837 F.2d at 491).  Courts may resolve policy-or-practice claims under *Payne* on summary judgment.  *See, e.g.*, *Am. Ctr. for Law & Justice v. Dep't of State*, 289 F. Supp. 3d 81, 90–91 (D.D.C. 2018).

District courts have "wide latitude . . . to fashion remedies under FOIA, including the power to issue prospective injunctive relief."  *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 846 F.3d 1235, 1242 (D.C. Cir. 2017) [hereinafter *CREW*] (citations omitted).  That latitude includes the "power to order relief beyond the simple release of extant records."  *Id*.  On a policy-or-practice claim, courts have "the power to enjoin a FOIA procedural violation . . . so long as that violation was 'in connection with the processing of the plaintiff's FOIA

requests.'" *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 265 (citing *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011)).

When an agency "employed the [challenged] policy or practice in violation of FOIA, [the plaintiff] is, at a minimum, entitled to a declaratory judgment." *Mo. Coal. for the Env't v. Army Corps of Eng'rs*, No. 18-663, 2019 WL 1411063, at *7 (D.D.C. Mar. 28, 2019). Declaratory relief can "serve a useful purpose in clarifying the legal relations at issue or afford relief from the controversy giving rise to the proceeding[.]" *Id.* (citing and commenting on *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980)).

Here, it is proper for the Court to resolve both parties' motions for summary judgment because the parties do not genuinely dispute any of the material facts underlying either motion and both present purely legal issues.

**ARGUMENT**

## I.     The DOJ guidance defining a "record" violates the FOIA.

The FOIA provides requesters access to records, "not information in the abstract." *Forsham v. Harris*, 445 U.S. 169, 185 (1980); *see AILA*, 830 F.3d at 677. More precisely, the FOIA allows access to "agency records,"[2] and there is significant jurisprudence interpreting that term. *See, e.g.*, *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989). This case presents the unresolved antecedent question of

---

[2] Agencies also maintain records that are not "agency records" subject to the FOIA. *See Bureau of Nat'l Affairs, Inc. v. Dep't of Justice*, 742 F.2d 1484 (D.C. Cir. 1984) ("personal records"); *Goland v. Cent. Intelligence Agency*, 607 F.2d 339 (D.C. Cir. 1978) ("congressional records"). The DOJ does not dispute that the records at issue are "agency records."

the definition of a "record."  Following *AILA*, this question is connected to agencies' previous use of redactions labeled "non-responsive" to withhold information.

Before *AILA*, agencies—including the DOJ—believed they could redact material within a record because the subject matter of that material was non-responsive to the request.  The D.C. Circuit has now foreclosed that practice because the FOIA "does not provide for withholding responsive but non-exempt records or for redacting nonexempt information within responsive records."  *AILA*, 830 F.3d at 677.  Yet as shown by the DOJ's behavior here and in its guidance, some agencies now believe they can evade *AILA* by treating portions of records as separate and distinct records and then withholding those supposedly distinct records as "non-responsive."  That makes a mockery of *AILA*.

The DOJ guidance and the agency's use of it here are a "failure to abide by the terms of the FOIA" and a "policy or practice [that] will impair [CoA Institute's] lawful access to information in the future."  *Payne Enters.*, 837 F.2d at 491.

## A.    Courts review the DOJ definition of a "record" *de novo.*

Courts review the definition of a "record" that agencies apply during informal adjudications of FOIA requests *de novo* because Congress has not entrusted the administration of the FOIA to any single agency.

Courts defer to an agency's reasonable interpretation of an ambiguous statutory term in a statute entrusted to its administration, if the agency provides that interpretation with the force of law.  *Chevron, U.S.A., Inc. v. Nat. Res. Def.*

*Council, Inc.*, 467 U.S. 837 (1984).[3]  But Courts "owe no particular deference to an agency's interpretation of FOIA." *Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115 (D.C. Cir. 2015) (cleaned up).  It "is precisely because FOIA's terms apply government-wide that [courts] generally decline to accord deference[.]"  *Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 307 (D.C. Cir. 2001).[4]

It is important "that the primary interpretive responsibilities rest on the judiciary, [because its] institutional interests are not in conflict with [the FOIA's] statutory purpose," as agency interests can be.  *Reporters Comm. for Freedom of the Press v. Dep't of Justice*, 816 F.2d 730, 734 (D.C. Cir. 1987) *rev'd on other grounds*, 489 U.S. 749 (1989).  By providing uniform interpretations of statutory terms, courts ensure the "meaning of FOIA [is] the same no matter which agency is asked to produce its records."  *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 613 (D.C. Cir. 1997) [hereinafter *Tax Analysts v. IRS*].

Courts have refused to defer to agency interpretations of various FOIA terms. *See Cause of Action*, 799 F.3d at 1115 (no deference to agency interpretation of fee provisions); *Al-Fayed*, 254 F.3d at 307 (same, "compelling need"); *Reporters Comm.*, 816 F.2d at 734 (same, exemption).  This refusal to defer to *interpretations* of statutory terms is contrasted with the deference the FOIA demands for the

---

[3] If *Chevron* does not apply, courts apply a less-deferential test and adopt the agency's position if it has the "power to persuade."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

[4] This lack of deference is contrasted with the Federal Records Act, which explicitly commands that the Archivist's "determination whether recorded information . . . is a record . . . shall be binding on all Federal agencies."  44 U.S.C § 3301(b).

*application* of some exemptions.   *See* 5 U.S.C. § 552(a)(4)(B) (giving agency affidavits "substantial weight"); *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) ("Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference.").   Courts also may defer to interpretations of regulatory provisions that are not grounded in FOIA-defined terms, but that were "promulgated in response to . . . an express delegation of authority[.]"   *Al-Fayed*, 254 F.3d at 307 n.7 (deferring to agency interpretation of regulations about criteria for expedited processing beyond those enumerated in the FOIA).

Courts should not defer to any agency interpretation of the statutory term "record"—whether announced in regulation,[5] guidance, or adjudication of a request—so that the "meaning of FOIA [will] be the same no matter which agency is asked to produce its records."   *Tax Analysts v. IRS*, 117 F.3d at 613.

The *AILA* court's unnecessary discussion of the definition of a record, despite "the parties [having] not addressed" it and the court "[having] no cause to examine the issue," has created confusion, with some district courts improperly affording what appears to be deference to agency interpretations.   830 F.3d at 678.   In *Lipton v. Environmental Protection Agency*, a district court mistakenly read *AILA* as stating that courts "will not adhere to agencies' definitions if they fall outside 'any *reasonable understanding* of a '"record[.]""'"   316 F. Supp. 3d 245, 255 (D.D.C. 2018) (emphasis added) (citing *AILA*).   So too in *Shapiro* did a district court defer to an agency's interpretation when it wrote that an agency must "justify its actions when

---

[5] *See, e.g.*, 32 C.F.R. § 1900.002(n) (Central Intelligence Agency providing regulatory interpretation of the term "record").

singling out a responsive record from a greater compilation of documents" and that "explanation will merit a presumption of good faith."  247 F. Supp. 3d at 75.

Agency interpretations of the FOIA's statutory terms are afforded no deference.  *Cause of Action*, 799 F.3d at 1115.  The term "record" is no different. This Court should apply *de novo* review to the definition of a "record" that the DOJ used in processing the FOIA request at issue and as set forth in its guidance.

### B.   The term "record" is adequately defined in the FOIA's statutory text and Supreme Court precedent.

The FOIA is codified with the Administrative Procedure Act ("APA"), which does not define the term "record."  *See* 5 U.S.C. § 551.  The FOIA itself, however, *does* define a "record" as "any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format[.]"  *Id.* § 552(f)(2)(A).[6]  The FOIA's definitions in Section 552 provide more clarity on and are more specific than the APA's definitions in Section 551.  *Compare id.* § 551 ("For the propose of this subchapter"), *with id.* § 552(f) ("For the purposes of this section"); *compare also id.* § 551(1) (defining agency), *with id.* § 552(f)(1) (expanding on the APA definition of agency).

Additionally, the use of the word "includes" followed by a description signals that Congress intended Section 552(f) to be the FOIA's statutory definition of the term "record."  Section 552(f) provides that a "'record'. . . *includes* . . . any information that would be an agency record, [etc.]."  (emphasis added).  This is a

---

[6] The definition extends to "any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management."  5 U.S.C. § 552(f)(2)(B).

standard method of defining a statutory term and the construction mirrors that of many definitions in Section 551.  For example, in the APA, a "'person' *includes* an individual, partnership, [etc.]"; a "'party' *includes* a person or agency, [etc.]"; and a "'license' *includes* the whole or a part of an agency permit, [etc.]."  *Id*. § 551(2), (3), (8) (emphasis added).   Congress has repeatedly used this approach to define statutory terms throughout the APA and did so in the FOIA as well.

The dicta in *AILA* appears to have missed this distinction, stating that although the "FOIA includes a definitions section, *id*. § 551, that section provides no definition of the term 'record.'"  830 F.3d at 678.  But there the *AILA* court cited the APA, not the FOIA.  The court did reference the Section 552(f) definition, but inexplicably claimed that it only "describes the term 'record'" and "provides little help in understanding what is a 'record'" as compared to the definitions of a record in the Privacy Act, Presidential Records Act, and Federal Records Act.  *Id*.

It is conspicuous that the DOJ, both in its motion for summary judgment and guidance, elevated the *AILA* court's Privacy Act reference while ignoring the court's simultaneous citations to the Presidential Records Act and Federal Records Act. *See* Def.'s Mot. at 8 (arguing that because "the *AILA* court specifically referenced the Privacy Act's definition of a record" it is "hard to see how OIP violated FOIA by instructing agencies to look to that definition"); DOJ Guidance at 2.  The DOJ makes no attempt to analyze or harmonize all three of the record statutes the *AILA* court referenced; its decision to elevate and rely only on the Privacy Act's definition is atextual to the FOIA, cherrypicked from *AILA*, and entitled to no deference.

This Court should conduct its analysis based on the FOIA because the statutory text contains two clauses that establish a sufficient definition of the term "record." *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent . . . is the existing statutory text[.]").

The first clause of the FOIA definition—"any information that would be an agency record subject to the requirements of this section"—describes the type of material that qualifies as a record. 5 U.S.C. § 552(f)(2)(A). This clause incorporates the concept of an "agency record" as defined by the Supreme Court's decision in *Tax Analysts*, which requires that an agency (1) "create or obtain the requested materials" and (2) "be in control of the requested materials at the time the FOIA request is made." 492 U.S. at 144–45. This first clause also clarifies that the FOIA covers informational material generally, not just documents. *See N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (finding audiotapes covered); *Save the Dolphins v. Dep't of Commerce*, 404 F. Supp. 407, 411 (N.D. Cal. 1975) (finding video recordings covered because in "common parlance ['record'] includes various means of storing information for future reference"). The DOJ does not dispute that the records at issue—three letters and their attachments—are "information that would be an agency record subject to the requirements of this section[.]" 5 U.S.C. § 552(f)(2)(A).

The second clause of the definition—"when maintained by an agency in any format, including an electronic format"—describes the status of informational material in the agency's hands before a requester submits a request. *Id.* Congress

added this definition in the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-123, § 3, 110 Stat. 3048, 3049, to ensure that electronic records, in addition to paper documents and other tangible objects, were covered by FOIA. *See* S. Rep. 104-272, 27 (1996) (The FOIA "requires that Federal agencies provide records to requesters in *any form or format in which the agency maintains those records*[.]" (emphasis added)). Thus, it was Congress's intent to allow access to informational materials in the form or format the agency currently maintains them.

This focus is important because a requester may not ask an agency to create or manipulate an existing record in response to a FOIA request. An "agency is not required to reorganize its files in response to a plaintiff's request[.]" *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978) (citation and internal quotation marks omitted). That is because the FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980). As a corollary, the FOIA should be interpreted so that an agency must process and disclose any informational material responsive to a request in the "form or format in which [it] maintains those records." S. Rep. 104-272, 27 (1996). An agency should not be allowed to divide an existing record (*e.g.,* a document it maintains as a unit) into multiple so-called "records" to withhold information from a requester.

This approach entails that, contrary to the DOJ guidance, records exist objectively and are not created or defined based on the intent of a requester or a

FOIA officer's interpretation of that intent.  For example, if an agency maintains a report as one cohesive document or computer file (such as a PDF file), then the entire report is one FOIA record.  The district court in *Gatore v. Department of Homeland Security* reached precisely this result when it analyzed the status of the agency's FOIA Processing Guide and found that, "given the Department's own indications that the FOIA Processing Guide is a cohesive record, complete with separately and continuously numbered sections and appendices . . .  it defies common sense to conclude that [the guide], in toto, does not constitute a 'record' subject to disclosure pursuant to the FOIA."  2017 WL 10777326, at *2.

### C.    The DOJ guidance is untenable because a record must pre-exist a request.

The DOJ's approach to defining a record is that the "nature of a FOIA 'record' is defined by both the content of a document *and* the subject of the request."  DOJ Guidance at 2.  In other words, the DOJ believes a FOIA record does not exist until an agency receives, interprets, and processes a request.  That approach is untenable because a record must pre-exist a request.  This is so for at least six reasons:

**(1) Requesting Only Extant Records**: The DOJ guidance clashes with the rule that requesters may request only records that already exist at the time of their request.  *See Judicial Watch, Inc. v. Dep't of Commerce*, 583 F.3d 871, 874 (D.C. Cir. 2009) ("FOIA . . . applies only to existing records[.]") (citation omitted).  But if a

record does not exist until the agency defines it during its search and in response to a request, how can there be an existing record when the request is submitted?[7]

District court application of the *AILA* dicta already has created tension with this longstanding rule.  In *Shapiro*, the district court found that when the agency "located the responsive pages related to Shapiro's FOIA request . . . [t]his set of documents (*i.e.*, pages) *became* the responsive record[.]"  247 F. Supp. 3d at 75 (emphasis added).  If the pages "became" the record when the agency located them during the search, what were the pages before the request and agency search?  If not yet a record, how could the requester have submitted a request for a record that did not yet exist?  *See Became*, Merriam-Webster ("to come into existence"), http://bit.ly/2Uiw1DN (last visited Apr. 26, 2019).

**(2) Uniformity**: The DOJ guidance conflicts with the rule that the "meaning of FOIA should be the same no matter which agency is asked to produce its records." *Tax Analysts v. IRS*, 117 F.3d at 613.  Under the DOJ guidance, this rule is violated because, for example, one agency may treat its email chains as a single record, while others may segment email chains into multiple records case-by-case.  Indeed, even the same email chain within the same agency could be treated as a single record or as multiple records, depending on the request.  *But see Am. Oversight*, 2019 WL 1430429 (refusing to allow agency to segment an email chain into several records).

---

[7] Aristotle, *Metaphysics* IV.3 (350 BC) (It "is impossible for anyone to believe the same thing to be and not to be" because "it is impossible that contrary attributes should belong at the same time to the same subject[.]").

**(3) Surplusage**: The DOJ's position would create surplusage in the FOIA's venue-selection provision, which provides that venue for a FOIA lawsuit is proper, among other places, in the district "in which the agency records are situated[.]" 5 U.S.C. § 552(a)(4)(B).   When a requester sues based on delay and before the agency has conducted its search, under the DOJ guidance the agency would not have yet defined the record.   But if that position were correct, then those records would not be "situated" anywhere—they do not exist—and the venue option would be nullified.   Elementary canons of statutory construction counsel against that result.   The canon against surplusage teaches that courts should construe terms "to give effect, if possible, to every clause and word of a statute[.]"  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (cleaned up).   And courts should "interpret [a] statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole[.]"  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (cleaned up).

**(4) The DOJ Annual FOIA Report**: The DOJ's own behavior outside the context of processing a FOIA request contradicts the idea that records are defined in relation to a request.   The FOIA requires that every fiscal year each agency report its FOIA activities.  *See* 5 U.S.C. § 552(e).  Among the items agencies must report is "the number of *records* that were made available for public inspection in an electronic format under subsection (a)(2)."   *Id*. § 552(e)(1)(Q) (emphasis added).   Those records include (1) final opinions and orders made in the adjudication of cases; (2) statements of policy and interpretations adopted by the agency but not

published in the *Federal Register*; (3) administrative staff manuals that affect the public; and (4) agency records that have been requested three or more times or are likely to be the subject of frequent requests.  *Id.* § 552(a)(2)(A)–(D).

The DOJ provides guidance in a handbook for agencies creating these annual reports.  *See* Pl.'s SUMF ¶ 22; Valvo Decl. Ex. 2 [hereinafter DOJ FOIA Annual Report Handbook].  In that handbook, the DOJ advises agencies to report when they proactively release "certain categories of *records* without waiting for a specific request to be received."  DOJ FOIA Annual Report Handbook at 62 (emphasis added).  This reporting includes the "first three categories of subsection (a)(2) *records*, [which] concern the operational documents of the agency[.]"  *Id.* at 63 (emphasis added).  Agencies report the number of records proactively released by both their FOIA and program offices.  *Id.* at 62.

In the DOJ fiscal year 2018 annual report, the agency reported that it proactively released more than 5,700 records.  *See* Pl.'s SUMF ¶ 23; Valvo Decl. Ex. 3 at 2–3.  Although a small portion of these records were released because they were "frequently requested," *see* 5 U.S.C. § 552(a)(2)(D)(ii), the majority were released under Section 552(a)(2)'s first three categories (that is, opinions and orders, policy statements, and staff manuals) and without receiving a request.  This is so because more than 4,700 of the records that the DOJ reported were released under subsection (a)(2) were released by DOJ program offices, not the FOIA offices that would have handled frequent FOIA requests.  Valvo Decl. Ex. 3 at 2–3.  Because records released under the first three categories of (a)(2) are released "without

waiting for a specific request to be received," it must be that those records were defined, identified, and counted without reference to a request or a FOIA officer's interpretation of a request's intended scope.  DOJ FOIA Annual Report Handbook at 62.  Thus even the DOJ—when counting records and not processing a request—believes that records exist objectively and independently of a FOIA request.

**(5) Agency Control**: The FOIA applies only to "agency records," not congressional, personal, or presidential records.  A record is an agency record if it was created or obtained by the agency and in the agency's control at the time of the request.  *Tax Analysts*, 492 U.S. at 144.  In determining control, courts often apply the four-factor *Burka* test, which looks to "'(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document [is] integrated into the agency's record systems or files.'"  *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citation omitted).[8]

Each of these factors necessarily considers how an agency treated a record before receiving a request seeking that record's disclosure.  For example, when determining whether a record is a congressional record, courts "safeguard Congress'

---

[8] With purported personal records, courts may apply a "totality of the circumstances" test that examines the *Burka* factors and other aspects of how a record was created, maintained, or used.  *Bureau of Nat'l Affairs, Inc.*, 742 F.2d at 1492–93.  Similarly, with congressional or presidential records, the first two *Burka* factors are typically dispositive under the "modified control test." *Judicial Watch, Inc. v. Secret Serv.*, 726 F.3d 208, 221–24 (D.C. Cir. 2013).  The differences between these tests are inconsequential to CoA Institute's argument here.

long recognized prerogative to maintain the confidentiality of its own records" and focus their inquiry on Congress' intent "to control the requested records." *United We Stand Am., Inc. v. Internal Revenue Serv.*, 359 F.3d 595, 600 (D.C. Cir. 2004) (citation omitted). Congress must affirmatively express this intent either "contemporaneous[ly] and specific[ly]" with the transfer of the record to an agency, *Paisley v. Cent. Intelligence Agency*, 712 F.2d 686, 694 (D.C. Cir. 1983), or before the agency creates the record at congressional direction. *See Am. Civil Liberties Union v. Cent. Intelligence Agency*, 823 F.3d 655, 666–67 (D.C. Cir. 2016). And the determination that a document or other informational material is a congressional record means that it is a record independently of a FOIA request. Indeed, because Congress must express its intent to retain control either contemporaneous with the transfer of a record, or specific to the conditions under which a record is created at congressional direction, the designation of the record must occur before a FOIA request is ever submitted. Both Congress and the agency, in other words, must know what constitutes a record independently of a request and before applying the agency-control test.

The Internal Revenue Service ("IRS") manual exemplifies this process. The IRS manual directs that when the congressional Joint Committee on Taxation ("JCT") "corresponds with the IRS under its general oversight authority, it generally includes a legend . . . that restricts the dissemination and use of both the inquiry and responsive *records*." Internal Rev. Manual § 35.5.4.9. That legend currently states: "This document is a *record* of the [JCT] . . . and is entrusted to the

22

Department of the Treasury for your use only in handling this matter." *Id*. The congressional control extends not just to the JCT's incoming letters but to IRS responses as well, which "are *records* of the [JCT] and shall be segregated from agency *records* and remain subject to the control of the [JCT]." *Id*. (emphasis added throughout).[9] These arrangements make no sense unless the IRS and the JCT are discussing records that already exist at the time JCT expresses its intent to retain control, or which will be created in direct response to a JCT inquiry or oversight request. Thus, records must pre-exist and be independent of any FOIA request.

Congress cannot intend to control records that will only be defined and come into existence on an *ad hoc* basis and according to an agency's future interpretation of a yet-to-be-submitted FOIA request. *Cf. Paisley*, 712 F.2d at 692–93 ("In the absence of any manifest indications that Congress intended to exert control over documents in an agency's possession," the records should be considered subject to the FOIA.). The DOJ guidance on the definition of a "record" scrambles the analytic framework of the entire agency-control inquiry and must be rejected.

**(6) The Presidential Records Act**: Yet another reason why a record must pre-exist a FOIA request is because the Presidential Records Act ("PRA") relies on that pre-existence for its operation. The PRA includes a list of the types of "documentary materials" that are appropriate for special treatment as presidential records. *See* 44 U.S.C. § 2201(1). But the PRA expressly excludes "documentary materials that are official *records* of an agency (as defined in [the FOIA])[.]" *Id*.

---

[9] CoA Institute takes no position here on whether these legends are sufficient to designate such records as congressional records.

§ 2201(2)(B) (emphasis added).  The DOJ's position would theoretically prevent the White House or an agency from determining whether a particular document is subject to the PRA, or whether it is excluded as an agency record, outside the FOIA context.  Agencies most often undertake such determinations when no FOIA request has been submitted, especially when considering their PRA preservation obligations.   If a record cannot be defined absent a request, how can the interrelation between the PRA and the FOIA be determined?   Proper administration of the PRA requires that records already exist in the form and format that the agency maintains them.   Only then can presidential records be distinguished from other materials.

* * *

The DOJ may respond that the only thing that needs to pre-exist a FOIA request is a document and not a "record."   *See* DOJ Guidance (using term "document" thirty-two times).   But that substitution of terms offends statutory interpretation.   The term "document" only appears in the FOIA six times, all referring to the fees agencies may charge for document processing and reproduction. The term "record" appears nearly one hundred times and in all the operative subsections discussing search and disclosure.   *See, e.g.*, 5 U.S.C. § 552(a)(2)(D) (requiring proactive disclosure of "copies of records"); *id* § 552(a)(3)(A) (agencies must disclose upon "request for records"); *id*. (requesters must "reasonably describe[] such records").

The DOJ's declarant contends that the agency should not have to process "superfluous, discrete packages of information" that it believes are non-responsive. Decl. of Vanessa R. Brinkmann ¶ 17, ECF No. 19-2.  This position must be rejected. It introduces an entirely new and undefined term ("packages of information") to the analysis[10] and, most importantly, ignores the statutory text.  Under the FOIA, a requester has a right to *records*, not documents or discrete packages of "information in the abstract." *Forsham*, 445 U.S. at 185.

The most natural and harmonious reading of the FOIA is that records must already exist *in fact* within an agency's control before a request is submitted.  This reading resolves all the conflicts discussed above.  The agency would be able proactively to disclose a record; a requester would be able to seek access to it and could reasonably describe it; venue would be proper wherever the record was situated; records could properly be counted in annual FOIA reports; the FOIA would harmonize with the PRA; and the agency-control test would make sense.

**D.     The DOJ guidance will impair CoA Institute's lawful access to records in the future.**

To prevail on a policy-or-practice claim, a plaintiff must show that not only does the policy violate the FOIA, as CoA Institute has shown above, but also that it "will impair the party's lawful access to information in the future."  *CREW*, 846 F.3d at 1242 (citations omitted).

---

[10] *See* Def.'s Mot. at 5 (referring sometimes to "packages of records," sometimes to "[p]ackets").

CoA Institute currently has many FOIA requests pending with the DOJ at various stages of the administrative process or that are the subject of ongoing litigation. Pl.'s SUMF ¶ 17; Answer ¶ 31 (admitted). The DOJ has instantiated its policy in guidance and has applied it to CoA Institute's FOIA requests several times, including in this case. Pl.'s SUMF ¶ 15; Answer ¶ 21 (admitted). Thus, the DOJ policy will impair CoA Institute's lawful access to information in the future.

* * *

The Court should review *de novo* the DOJ's interpretation of the definition of a record both in its guidance and as applied to CoA Institute's FOIA request. The FOIA statute and Supreme Court precedent compel that the definition of a record is (1) any informational material, (2) created or obtained by an agency, (3) in the control of an agency when a request is made, and (4) in the format that the agency maintains that material at the time of the request. The DOJ guidance defining a record conflicts with this definition and violates the FOIA because it makes no effort to apply the FOIA's statutory text, uses the Privacy Act's definition, and fails to recognize that a record must pre-exist a request. This policy will impair CoA Institute's access to information in the future. Summary judgment is appropriate because the material facts underlying these claims are undisputed.

## II. The DOJ's segmentation of QFRs into multiple "records" violates the FOIA because each letter and its attachments are a single record.

### A. The DOJ produced four records to CoA Institute.

The DOJ released four records responsive to FOIA request OLA/14-1096. Pl.'s SUMF ¶ 9, Compl. Ex. 3. Those four records are:

**Record 1**: A May 16, 2011 email from Rita Aguilar to Faith Burton, *et al.*, discussing Senate Appropriations QFRs. Compl. Ex. 3 at 3–7. The DOJ withheld no information within this record and it is not implicated here.

**Record 2**: A January 4, 2011 letter from Assistant Attorney General Weich to House Committee on the Judiciary Chairman John Conyers. *Id.* at 8–21. The letter referenced and included an attachment: a single, consecutively paginated document containing responses to QFRs arising from an appearance of Attorney General Holder before the committee. Within the consecutively paginated attachment, the QFRs and their responses were consecutively numbered, and the attachment contained a single, overarching title formatted:

**Questions for the Record**
**Attorney General Eric H. Holder, Jr.**
**U.S. House Committee on the Judiciary**
**May 13, 2010**

The DOJ withheld significant information within this record by applying redactions labeled "Non-Responsive Record" and by excising many pages.

**Record 3**: A September 14, 2010 letter from Assistant Attorney General Weich to Senate Committee on the Judiciary Chairman Patrick Leahy. *Id.* at 22–28. As with the previous record, this letter referenced and attached a single, consecutively paginated document that contained responses to QFRs arising from an appearance of Director Carbon of the Office of Violence Against Women before the committee. The QFRs and their responses were consecutively numbered, and the attachment included a single, overarching title formatted:

**Questions for Director Carbon on "The Increased Importance of the Violence**
**Against Women Act in a Time of Economic Crisis" from Senator Sessions**

The DOJ withheld significant information within this record by applying redactions labeled "Non-Responsive Record."

**Record 4**: An April 21, 2010 letter from Senate Committee on the Judiciary Chairman Patrick Leahy to Attorney General Holder. *Id*. at 29–35. The letter referenced and attached two documents, both of which consisted of consecutively numbered QFRs submitted by committee members, including a consecutively paginated four-page document comprising a set of QFRs from Senator Coburn, and a two-page document, without page numbers, comprising a set of QFRs from Senator Feingold. Both attachments contained titles, formatted respectively:

**Written Questions of Senator Tom Coburn, M.D.**
*Attorney General Eric Holder*
*Hearing: Oversight of the Department of Justice*
U.S. Senate Committee on the Judiciary
April 21, 2010

Senate Judiciary Committee Hearing
"Oversight of the U.S. Department of Justice"
Wednesday, April 14, 2010
Questions Submitted by U.S. Senator Russell D. Feingold
to Attorney General Eric H. Holder Jr.

The DOJ withheld significant information within this record by applying redactions labeled "Non-Responsive Record."

> **B.     Applying the FOIA's definition of a record to each letter and its attachment shows that each letter is a record because the DOJ maintains them as one unit.**

As set forth above, the definition of a record under the FOIA is (1) any informational material, (2) created or obtained by an agency, (3) within an agency's control when a request is submitted, and (4) in the format it is maintained by an agency at the time of a request. Applying this definition to each of the letters and

their attachments shows that each is a record and must be produced as a unit without the use of "non-responsive" redactions.

The DOJ does not dispute that the documents at issue here (1) are informational material, (2) created or obtained by the DOJ, and (3) within its control at the time of CoA Institute's request.  The only issue to be determined is the form and format in which the DOJ maintained those documents at the time of CoA Institute's request.

The DOJ revealed the form and format of the records at issue when it responded to CoA Institute's FOIA request and in the papers accompanying its motion for summary judgment.  As described above, the DOJ produced three cover letters, each of which referenced an attachment (Record 4 contained two attachments).  Each attachment is a unit, as evidenced by their consecutive pagination, consecutive numbering of items within the document, and their titles— a single, overarching identifying description that applies to the entire document. The *Gatore* court reached the same result when considering an agency's "FOIA Processing Guide," because it was "a cohesive record, complete with separately and continuously numbered sections and appendices[.]"  2017 WL 10777326, *2.

The three cover letters and their attachments comprise three records because the letters reference and incorporate their attachments.  *See Parker*, 278 F. Supp. 3d at 451–52 (finding a letter and attachment were "one indivisible whole . . . [because the letter] touches on the subject matter of the attachment and refers the recipient to examine its contents"); *Judge Rotenberg Educ. Ctr.*, 2019 WL 1296957,

at *8 (collecting cases).  For example, both Records 2 and 3 state: "Enclosed please find responses to [QFRs] . . . .  We hope that this information is of assistance to the Committee."  Compl. Ex. 3 at 8, 22.  And Record 4 states: "Attached are written questions from Committee members.  We look forward to including your answers to these questions[.]"  *Id.* at 29.

The unitary nature of the three records is confirmed because the attachments contain a consecutively numbered list within a single, consecutively paginated document and because the DOJ had to redact individual QFRs, instead of just withholding the entirety of a document.  If the DOJ actually had maintained the various QFRs each as a separate record in its recordkeeping system, it would not have had to redact any portion of the attachments as a "non-responsive record."  It simply would not have produced that QFR.

The Brinkmann Declaration filed in support of the DOJ's motion provides additional support for the unitary nature of the records at issue.  The declaration details how the agency created or obtained and then maintained the letters and their attachments as a unit.  Ms. Brinkmann explains that "QFRs are normally first received by [the Office of Legislative Affairs], who then divides the questions by subject-matter and assigns individual questions to various individuals or components to prepare responses based on expertise."  Brinkmann Decl. ¶ 20.  She recognizes that incoming QFRs "may be sent in multiple files, divided by Senator or Representative, or they may be compiled into one large file."  *Id.* ¶ 21.

Ms. Brinkmann declares that "OIP understood the Congressional creators' predominant purpose in compiling these disparate questions into *one document* to be efficiency" and admits that it made "the decision to compile these disparate QFRs into *one 'document.'" Id.* ¶ 22 (emphasis added); *see also id.* ("QFRs provide an opportunity for multiple members of Congress to each ask multiple questions all within a single, compiled document."); *id.* ¶ 16 (An "individual who created a given document may have had a particular purpose for compiling certain distinct and discrete pieces of information together."); *id.* ¶ 17 (A record creator may compile "disparate pieces of information together at the time a document was created[.]").

The DOJ wants to inject the intent of the record creator, as well as its own discretion in interpreting the intent of a FOIA requestor, as a reason why a single document should not be treated as a single record. *See id.* ¶ 22 ("original purpose for compiling QFRs is efficiency"); *id.* ¶ 16 ("individual who created a given document may have had a particular purpose"); *id.* ¶ 17 ("document is no longer serving or furthering that purpose in the context of a FOIA review"). But neither the intent of the record creator nor an agency interpretation of when that intent is relevant is part of the definition of a record under the FOIA. What matters is whether a record was in fact created, regardless of the intent of the record creator, and how that new record is then maintained in the agency's recordkeeping system. When an agency compiles information into a single document and then maintains the document as such in its recordkeeping system, that document is a record for purposes of the FOIA.

This Court has already reached a similar conclusion as it relates to an email chain.  In *American Oversight v. Department of Health and Human Services*, this Court explained that an email reply "incorporates what came before, and the two [messages] form a unified exchange" and "[w]hether that was a conscious or subconscious choice is irrelevant; what matters is that the emails sent by agency personnel did in fact contain the prior exchanges with Congressional staff."  2019 WL 1430429, at *3.  The same is true here.  It is irrelevant whether the person who compiled the letters, the QFRs, and responses to those QFRs had a subjective intent that they be treated as one record or many under the FOIA.  All that matters is that new records were created when those elements were combined.  And now the DOJ must produce those records "as a unit."  *AILA*, 830 F.3d at 677.

Common sense and normal parlance bolster this result.  In *Gatore*, the court found that an agency revealed that its FOIA Processing Guide was "a cohesive record" by "making multiple references" to it as one thing—a unit.  2017 WL 10777326, at *2.  This result was not affected by the fact that the "FOIA Processing Guide is hundreds of pages long and consists of separate and discrete sections relating to any number of different FOIA-related topics."  *Id*.  This Court likewise noted that "it is commonly understood" that "the day-to-day reality of electronic communication" means an email chain cannot be segmented into several records.  *Am. Oversight*, 2019 WL 1430429, at *3.  Here, common sense directs that the QFRs together with the cover letter (whose only purpose was to transmit the QFRs) are *one thing*.  It is normal parlance to refer to them as one cohesive document, as both

parties have been doing throughout this litigation, especially as each attachment has a unique, identifying title that applies to the document as a whole.  *See, e.g.*, Compl. Ex. 3 at 9 ("Questions for the Record, Attorney General Eric H. Holder, Jr., U.S. House Committee on the Judiciary, May 13, 2010").

The DOJ created a record when it gathered "distinct and discrete pieces of information" from "various individuals or components to prepare responses" to the QFRs and then put that information "within a single, compiled document." Brinkmann Decl. ¶¶ 16, 20, 22.  The DOJ also created a record when it wrote a cover letter to accompany those responses to the QFRs.  Then, the DOJ created Records 2 and 3 when it attached the responses to the QFRs to the cover letters. Similarly, the DOJ obtained Record 4 when it received two sets of QFRs under a single cover letter from Senator Leahy.  *See* Compl. Ex. 3 at 29.  The DOJ must now release all three of those records in their entirety.

## C.   The DOJ's administrability concerns are misplaced and irrelevant.

The DOJ complains that it should not have to follow *AILA* and produce records "as a unit" because to do so would be time-consuming and laborious.  Def.'s Mot. at 12.  This concern is both misplaced and irrelevant.

In its motion, the DOJ argues that if it had treated the QFRs and responses "as one record, it would have had to devote time and resources to parsing [those] records for exempt material on a line-by-line basis and engaging in consultations with other agency components on this non-responsive information—time and resources that can be spent responding to other FOIA requests."  Def.'s Mot. at 12–

13.  The DOJ has also raised this argument in its guidance and in the Brinkmann Declaration.  *See* DOJ Guidance at 1 ("Given that the processing of FOIA requests can be very labor-intensive and time-consuming, it is in both the requesters' interests and the agencies' that time and resources not be expended unnecessarily by reviewing material that was not requested."); Brinkmann Decl. ¶¶ 17, 25.

These concerns are both misplaced and easily assuaged.  When it applied its guidance in this case, the DOJ had to evaluate each individual QFR to determine which were responsive and which were not, because the QFRs in each attachment were maintained as a single document.  The agency, in other words, was still required to expend time and resources to determine which portion of the document it intended to produce.

Moreover, it is already a best practice in FOIA administration for a FOIA officer to establish an open line of communication with a requester.  As the DOJ itself advises, "[e]stablishing good communication and working cooperatively with FOIA requesters is a very simple and yet essential element to ensuring that each agency's FOIA process is working[.]"  *The Importance of Good Communication with FOIA Requesters*, Office of Info. Pol'y, Dep't of Justice, http://bit.ly/2IGW2dF (last visited Apr. 26, 2019).  It is commonplace for a FOIA officer to contact a requester to discuss the scope of a request, as indeed happened here.  *See* Compl. Ex. 3 at 1 (memorializing communications between the DOJ and CoA Institute over the scope of the request); Pl.'s SUMF ¶ 24.  It is similarly commonplace for a FOIA officer to contact a requester after an agency has located responsive records to determine

whether a requester wants the agency to process all the records located. Pl.'s SUMF ¶ 25. For example, a FOIA officer may contact a requester to determine whether the requester wants the agency to produce extensive "news clippings" or other records the FOIA officer believes a requester may not want, but which are still responsive. Pl.'s SUMF ¶ 26.

A similar approach would resolve any administrability concerns about long records. If a FOIA officer locates a long responsive record that contains only a few portions that the FOIA officer believes is "responsive information," the FOIA officer should contact the requester to determine whether the requester wants the entire record or only those portions that the agency believes the requester will find useful. A requester is, of course, free to accept less than an entire record. But if the requester would like the entire record—or if the agency does not consult with the requester—the FOIA requires the agency to produce that record "as a unit." *AILA*, 830 F.3d at 677.

To resolve this issue otherwise would result in a pleading exercise where requesters would have to include capacious language to compel an agency to produce the entirety of a record, despite the presence of potentially unresponsive information within that record. For example, CoA Institute has taken to adding the following language to many of its FOIA requests:

> [I]f the agency uncovers responsive email records, CoA Institute's request specifically seeks the entirety of any email chain, any portion of which contains an individual email message responsive to this request, *i.e.*, the entire email chain is responsive.

Pl.'s SUMF ¶ 27, Valvo Decl. ¶ 10.  CoA Institute has felt compelled to do so because agencies follow the DOJ guidance and try to evade the commonsense and natural conclusion that an email chain is one record.  The same is true here for the QFRs.

In any event, it is irrelevant whether the DOJ believes it is burdensome to comply with the FOIA and its terms.  The statute controls.  Its definitions must be given effect.  That the DOJ must devote time and resources to complying with the FOIA and to produce records as a unit is no reason to ignore the FOIA.

## Conclusion and Relief Sought

For these reasons, CoA Institute urges the Court to deny the DOJ's motion for summary judgment; grant CoA Institute's motion; declare the DOJ guidance in violation of the FOIA; order the DOJ to withdraw it; order the DOJ to re-produce Records 2, 3, and 4 in their entirety; and grant such other relief as the Court considers appropriate.

Date: April 26, 2019

Respectfully submitted,

*/s/ R. James Valvo, III*
R. James Valvo, III (D.C. Bar No. 1017390)
Ryan P. Mulvey (D.C. Bar No. 1024362)
Lee A. Steven (DC Bar. No. 468543)
Cause of Action Institute
1875 Eye St., NW, Suite 800
Washington, DC 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
james.valvo@causeofaction.org
ryan.mulvey@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff*