# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| CAUSE OF ACTION INSTITUTE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-2373 (ABJ) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

The Cause of Action Institute ("COA" or "plaintiff") is a non-profit government oversight organization, Compl. [Dkt. # 1] ¶ 5, and in December of 2013, it submitted a request for documents to the Office of Information Policy ("OIP") of the United States Department of Justice ("DOJ"). *Id.* ¶ 7. On October 15, 2018, it filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. (2012), claiming that DOJ impermissibly withheld responsive records, and that the FOIA guidance issued by OIP defining the term "record" is inconsistent with the statute. Compl. ¶¶ 34–54.

Defendant has moved for summary judgment, arguing that its guidance comports with FOIA and that it applied its guidance appropriately in redacting non-responsive information. Def.'s Mot. for Summ. J. [Dkt. # 19] ("Def.'s Mot."). Plaintiff opposed the motion and cross-moved for summary judgment. Pl.'s Cross-Mot. for Summ. J. [Dkt. # 21] ("Pl.'s Cross-Mot."). For the following reasons, the Court will grant in part and deny in part defendant's motion for summary judgment, and it will grant in part and deny in part plaintiff's cross-motion for summary judgment.

# BACKGROUND

## I. The *AILA* Decision

In 2016, the D.C. Circuit decided *American Immigration Lawyers Association v. Executive Office for Immigration Review* ("*AILA*"), 830 F.3d 667 (D.C. Cir. 2016). In that case, the American Immigration Lawyers Association submitted a request to the Executive Office for Immigration Review seeking disclosure of records related to complaints about the conduct of immigration judges. *Id.* at 669. The agency produced records but withheld certain information it deemed non-responsive within the otherwise responsive records. *Id.*

When the matter was appealed, the Court held that the FOIA "statute does not provide for withholding responsive but non-exempt records or for redacting nonexempt information within responsive records." *Id.* at 677. It ruled that "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Id.*, citing 5 U.S.C. § 552 (a)(3)(A).

Applying a principle calling for the production of a "record" in its entirety raises the question of what constitutes a record, and whether a single document could be comprised of multiple records. But that question was not raised by the parties in *AILA*, and the Court said it found "no cause to examine the issue." *Id.* at 678. The Court of Appeals did observe, though, that the Act does not define the term, and that "agencies . . . in effect define a 'record' when they undertake the process of identifying records that are responsive to a request." *Id.* It stated that it had "no occasion" to "consider the range of possible ways in which an agency might conceive of a 'record,'" but it noted that "in guidance to agencies on processing FOIA requests, the Department of Justice addressed the issue of documents that cover multiple, unrelated topics" and that its

guidance provides "considerations for agencies to take into account when determining whether it is appropriate to divide such a document into discrete 'records.'"[1] *Id.* Finally, the Court added that it found "it difficult to believe that any reasonable understanding of a 'record' would permit withholding an individual sentence within a paragraph within an email on the ground that the sentence alone could be conceived of as a distinct, non-responsive 'record.'" *Id.* at 679.

## II. DOJ's Office of Information Policy's Guidance on FOIA

The mission of DOJ's Office of Information Policy ("OIP") is to "encourage and oversee agency compliance with the Freedom of Information Act." Office of Information Policy: About the Office, https://www.justice.gov/oip/about-office (last visited, Feb. 5, 2020). To that end, OIP publishes guidance on FOIA to assist agencies in "understanding the many substantive and procedural requirements of the FOIA." *Id.*

OIP updated its guidance in the wake of the *AILA* decision, and one of the topics it has addressed is what constitutes a "record." Declaration of Vanessa R. Brinkmann [Dkt. # 19-2] ("Brinkmann Decl.") ¶ 13, citing Ex. I to Brinkmann Decl. [Dkt. # 19-2] ("OIP Guidance"). It sets out two principles to be followed when making that determination in response to a FOIA

---

1 In the wake of *AILA*, many district courts have found that the Court's reference to the guidance in the opinion means that DOJ's policy statements can be relied upon when determining what a record is. *See, e.g.*, *Institute for Policy Studies v. CIA*, 388 F. Supp. 3d 51, 53 (D.D.C. 2019) ("And specifically, [prior opinions] suggest two reference points to assess proposed divisions: 1995 guidance from the Justice Department, and the agency's prior practices."); *Judge Rotenberg Educ. Ctr., Inc. v. U.S. Food & Drug Admin.*, 376 F. Supp. 3d 47, 60 (D.D.C. 2019) (while agencies "have the flexibility to define 'record' in a 'range of possible ways,' . . . some benchmarks inform that analysis," such as "DOJ guidance, which has been updated in response to *AILA*"); *Shapiro v. CIA*, 247 F. Supp. 3d 53, 74 (D.D.C. 2017) ("[T]he DOJ's Office of Information Policy has provided a helpful set of criteria for agencies to take into account when determining whether it is appropriate to divide [documents that cover multiple, unrelated topics] into discrete 'records.'") (internal quotation marks omitted).

request: (1) "Be Guided by the Privacy Act's Definition of 'Record'"; and (2) "Link Records to Subject of Request." OIP Guidance at 2.

Under the first principle, OIP explains that "[a]gencies can use the definition of record found in the Privacy Act . . . . Thus, each 'item, collection, or grouping of information' on the topic of the request can be considered a distinct 'record.'" *Id.*, citing 5 U.S.C. § 552a(a)(4). It goes on to state that a "'record' can potentially constitute an entire document, a single page of a multipage document, or an individual paragraph of a document." *Id.*

Under the second principle, OIP provides that:

> The nature of a FOIA 'record' is defined by both the content of a document and the subject of the request. For example, if a document consists of a list of summaries of complaints against immigration judges organized by the name of each judge, and the subject of the FOIA request is 'complaints against all immigration judges' then the entire document is the 'record' for purposes of that FOIA request because the entire document is a 'collection or grouping of information' on the subject of the request.

*Id.* OIP's Guidance recognizes that such "distinctions are most easily made when the document can reasonable be broken into discrete units . . . . By contrast, if a document cannot be viewed as containing discrete 'items or groupings' of information on different topics then it must be treated as a single 'record' and the entirety must be processed for exemption applicability." *Id.*

## III. Factual and Procedural Background

On December 24, 2013, plaintiff Cause of Action Institute sent a FOIA request to OIP seeking the following records, from January 21, 2009 to present:

1. All documents, including but not limited to email communications, referring or relating to Executive Order 13457, "Protecting American Taxpayers from Government Spending on Wasteful Earmarks."

2. All documents, including but not limited to email communications between and among any political appointee, White House liaison, congressional liaison, and/or any employee of the White House, referring or relating to any request to commit, obligate, or expend funds.

> 3. All documents evidencing the agency's decision to commit, obligate, or expend funds based upon a request from Congress or the White House.

Pl.'s FOIA Request, Ex. 1 to Compl. [Dkt. # 1-1] ("FOIA Request") at 1. OIP acknowledged receipt of the FOIA Request on February 3, 2014. Letter from OIP to COA, Ex. B to Brinkmann Decl. [Dkt. # 19-2]. OIP and COA agreed that the scope of the request would be "all communications between a Department political appointee and Members of Congress, their staff, or employees of the White House relating to grants of the Office of Justice Programs, Office on Violence Against Women, and Community Oriented Policing Services and records relating to Executive Order 13457." Brinkmann Decl. ¶ 5.

On September 14, 2017, OIP sent an interim response to plaintiff, indicating that as of that time, it had located five pages of material responsive to the FOIA Request, and that those pages would be withheld completely pursuant to FOIA Exemption 5. Sept. 14, 2017 Letter from OIP to COA, Ex. C to Brinkmann Decl. [Dkt. # 19-2]. Two weeks later, on September 29, 2017, OIP sent another interim response stating that an additional 873 pages were found, and 47 of those pages could be released fully. Sept. 29, 2017 Letter from OIP to COA, Ex. D to Brinkmann Decl. [Dkt. # 19-2]. Ten pages would be withheld under Exemption 5, and 816 pages had to be referred to other DOJ offices for review: the Office of Justice Programs, the Justice Management Division, and the Community Oriented Policing Services. *Id.* Those DOJ components responded to plaintiff directly. Brinkmann Decl. ¶ 5.

On January 30, 2018, OIP sent a final response, stating that it located 143 responsive pages. Thirty-two pages were produced fully while one page was released with redactions pursuant to Exemption 6. Letter from OIP to COA, Ex. E to Brinkmann Decl. [Dkt. # 19-2]. Seventy-one pages were withheld fully under Exemption 5, and thirty-four pages were referred to other

components of DOJ to respond directly to plaintiff.  *Id.*  OIP also stated: "Please be advised that these pages also contained non-responsive records, which we have marked accordingly."  *Id.*

In total, OIP identified 1,021 pages responsive to the FOIA request.  Brinkmann Decl. ¶ 5. Defendant withheld information from these pages pursuant to Exemptions 5 and 6.  *Id.*  Other information was redacted because defendant deemed it to be a non-responsive.  *Id.* ¶ 10.

On October 14, 2018, plaintiff filed its complaint against OIP, challenging OIP's redactions in connection with three groups of records:

- A letter dated January 4, 2011, from then-Assistant Attorney General Ronald Weich to then-Chairman of the U.S. House Committee on the Judiciary John Conyers, transmitting responses to "questions for the record" ("QFRs") arising from an appearance of then-Attorney General Eric Holder before the committee on May 13, 2010.  The letter was released in full, but portions of the attachment were withheld by applying redactions labeled "Non-Responsive Record."

- A letter dated September 14, 2010, from then-Assistant Attorney General Ronald Weich to then-Chairman of the U.S. Senate Committee on the Judiciary Patrick Leahy, transmitting responses to QFRs that followed an appearance of then-Director of the Office of Violence Against Women Susan Carbon before the Senate Judiciary Committee on May 5, 2010.  The letter was released in full, but portions of the attachment were withheld by applying redactions labeled "Non-Responsive Record."

- A letter dated April 21, 2010, from then-Chairman of the U.S. Senate Committee on the Judiciary Patrick Leahy to then-Attorney General Eric Holder, transmitting written QFRs from various Committee members.  The letter was released in full, and the enclosed questions were partly withheld as a "Non-Responsive Record."

Compl. ¶ 15.

Plaintiff does not challenge the adequacy of the search for records or the application of any exemption.  In this lawsuit, it asserts that OIP improperly withheld information contained within these sets of documents on the grounds that they were separate, non-responsive records when responding to its 2013 FOIA request ("Claim 1").  Compl. ¶¶ 39–44.  It also alleges that DOJ has

a policy and practice – memorialized in the OIP Guidance – of improperly segmenting one record into multiple records to avoid disclosure, and that the policy violates the FOIA statute ("Claim 2"). *Id*. ¶¶ 34–54. Plaintiff seeks: (1) an order that defendant produce the records listed above eliminating the redactions labeled "non-responsive record"; (2) a declaration that the guidance violates FOIA; and (3) an injunction directing DOJ to withdraw the guidance and cease using it. *Id.* ¶ 33.

Defendant filed a motion for summary judgment on April 5, 2019, *see* Def.'s Mot., and plaintiff opposed the motion and filed a cross-motion for summary judgment on April 26, 2019. *See* Pl.'s Cross-Mot. For the reasons stated below, the Court will deny in part and grant in part both motions for summary judgment on Claim 1, and because the Court does not have jurisdiction to address plaintiff's challenge to the OIP Guidance as a general matter, it will not reach the merits of Claim 2.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each

party's motion in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Id.* at 247–48. A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (citation and internal quotation marks omitted).

## ANALYSIS

**I.  It was not inconsistent with FOIA for DOJ to treat an individual Congressional Question for the Record and the agency's response as a distinct record.**

The FOIA request called for records from a particular time period related to distinct topics: Executive Order 13457, "Protecting American Taxpayers from Government Spending on Wasteful Earmarks;" "any request to commit, obligate, or expend funds;" and "the agency's decision to commit, obligate, or expend funds based upon a request from Congress or the White House." FOIA Request at 1.

8

Plaintiff contends that when DOJ responded, it improperly redacted non-responsive information from otherwise responsive records, in contravention of *AILA*. Pl.'s Cross-Mot. at 26–36. Specifically, plaintiff challenges defendant's redactions in connection with three letters and their attachments. Compl. ¶ 15.

The first letter, dated January 4, 2011, was sent by Assistant Attorney General Ronald Weich to then Chairman of the House Committee on the Judiciary, John Conyers, Jr. Ex. 3 to Pl.'s Compl. [Dkt. # 1-3] at 8. The attachment, which starts on the next page, is entitled:

Questions for the Record
Attorney General Eric H. Holder, Jr.
U.S. House Committee on the Judiciary
May 13, 2010

In the attachment, questions are divided by members of Congress. Each question is separated by numbers or letters and space breaks. For example, page 1 of the attachment contains "Questions Posed by Chairman Conyers, Jr." Each of his questions has been assigned a number, and the response from DOJ is located directly below the question. And in the agency's response to the FOIA request, various individual questions and their responses have been redacted as "non-responsive records." Similarly, page 37 of the attachment consists of "Questions Posed by Representative Weiner," and some of his questions and the corresponding responses were withheld.

The second letter was sent from Assistant Attorney General Reich to the Chairman of the Senate Committee on the Judiciary, Patrick Leahy, on September 14, 2010. Ex. 3 to Compl. [Dkt. # 1-3] at 22. The attachment to this letter is six pages long, and it is entitled "Questions for Director Carbon on 'The Increased Importance of the Violence Against Women Act in a Time of Economic Crisis' from Senator Sessions.'" *Id.* at 23. The questions are separated by number,

letter, and space breaks, and the responses follow each question. Some questions and their responses were redacted as "non-responsive records." *Id.* at 23–27.

Finally, the last letter was sent from Senator Patrick Leahy to then Attorney General Eric Holder on April 21, 2010.[2] Ex. 3 to Compl. at 29. The attachments to the letter relay questions from two members of the Judiciary Committee, Senator Tom Coburn, M.D., and Senator Russell D. Feingold. Each Senator's questions appear on a separate page: the heading on the first page of the attachment is "Written Questions of Senator Tom Coburn, M.D.," and a list of eight questions with subparts follow. Various questions within each senator's list of questions were redacted as "non-responsive records."

Through its declarant, defendant explains that it determined that a "record" would consist of a question or a sub-question and any corresponding responses. Brinkmann Decl. ¶¶ 23, 24; Def.'s Statement of Undisputed Material Facts [Dkt. # 19] ¶ 17 ("[E]ach QFR and accompanying response, including any sub-questions and responses thereto, were distinct records."). Defendant's declarant averred that:

> In each instance where OIP identified a question or sub-question that fell within the scope of [p]laintiff's request, OIP considered the corresponding answer to be a part of the responsive record, consisting of both the question or sub-question and the answer. The same was true where OIP identified an answer that fell within the scope of [p]laintiff's request, and OIP then considered the corresponding question or sub-question to be a part of the responsive record.

Brinkmann Decl. ¶ 23.

Defendant submits that its decision to treat questions or sub-questions as distinct records comports with FOIA and the Circuit Court's discussion in *AILA*. Def.'s Mot. at 10–11. Plaintiff

---

2   This letter contains redactions pursuant to FOIA Exemption 6, which plaintiff does not contest.

argues that the agency's definition of a record here was unduly narrow, and that defendant should have produced the entire document consisting of all QFRs, sub-questions, and responses. Pl.'s Cross-Mot. at 28–33.

The Court finds that the agency's decision to treat a sub-question as distinct from the overall question of which it was a part of is too narrow, but plaintiff's definition, which would require disclosure of questions and responses that are wholly unrelated to plaintiff's FOIA request, is too broad. The Court finds that a record in this case should be defined as a question, including all subparts or sub-questions, and any corresponding answers. This finding is based upon the nature of the QFRs, the structure of the documents, the D.C. Circuit's decision in *AILA*, and how records have been defined by other courts in this district.

QFRs are written questions from members of Congress which are typically directed to an individual or a component within DOJ for a response. Brinkmann Decl. ¶ 21. They "provide an opportunity for multiple members of Congress to each ask multiple questions all within a single, compiled document." *Id.* ¶ 22. By their nature, QFRs cover multiple subjects; the documents are compilations of multiple questions with questions organized by member, as opposed to by topic. *See id.* ¶ 21. At times, QFRs can "consist of hundreds of pages of questions, and questions can come from dozens of Senators or Representatives." *Id.* The organization of QFRs can vary: the questions "may be sent in multiple files, divided by Senator or Representative, or they may be compiled into one large file." *Id.* Compiling different members' questions into a single document, and DOJ's responses into a single response document, can be efficient, as it eliminates the need

for members to send multiple letters to the Department and for the Department to direct separate responses to the members. *Id*. ¶¶ 21–22.

When the questions are received by the Office of Legislative Affairs, OLA will "divide[] the questions by subject-matter and assign[] individual questions to various individuals or components to prepare responses based on expertise." *Id*. ¶¶ 20, 22 (OIP was "aware of the Department's own internal practice of dividing up QFRs into their constituent parts and assigning them to various individuals or components for the purpose of drafting responses."). Thus, the response to one question may not have been written by the same individual or individuals who responded to other questions.

Plaintiff insists that because each letter and its attachments are maintained together as one unit, they should be considered one record. Pl.'s Cross-Mot. at 28. Plaintiff relies on a decision issued by this Court in which the Court found that an email chain had been improperly divided into distinct records.[3] *Am. Oversight v. Dep't of Health and Human Servs.*, 380 F. Supp. 3d 45, 50–51 (D.D.C. 2019). In that case, the agency had redacted certain emails in a chain based on whether the author was an executive branch official on the grounds that the FOIA request at issue only asked for communications *from* the agencies to Congress. *Id.* at 50. Under that approach, "when an agency employee replied to an email emanating from Congress and the previous

---

3   Plaintiff also relies on *Gatore v. United States Dep't of Homeland Security*, Civ. A. No. 15-489, 2017 WL 10777326 (D.D.C. June 27, 2017) in which plaintiff requested documents relating to the processing, answering, and responding to FOIA requests for assessments of asylum officers. The court found a document entitled "FOIA Processing Guide" was one record, and that the agency could not redact portions of it as non-responsive. *Id.* at *3. In that case, the court doubted the defendant's assertion that the guide was not one record, because the department itself treated the guide as a cohesive record in its affidavits, and it admitted that each section in the guide related to "FOIA-related topics." *Id.* at *2. Here, the agency has not treated each document containing hundreds of questions as one record, and the questions in the document are not related to one topic.

exchanges were included in the response, defendants redacted from the thread any email that was authored by Congress on the grounds that it was a 'non-responsive record.'" *Id.* The Court found that defendant's approach was "unduly literal and stingy," and it observed that the very nature of a "reply" – as opposed to a "new message" – implies that the communication is responsive to the message that came before it, "and therefore, it incorporates what came before, and the two form a unified exchange." *Id.* at 51.

Plaintiff contends that the instant situation is analogous to email chains. Pl.'s Cross-Mot. at 32. But the same reasoning does not apply. Each QFR is essentially a separate communication, although several may be bundled together for transmission to streamline the question and answer process. Brinkmann Decl. ¶ 22. In the first attachment, the questions were divided up by congressman, and each congressman asked over 35 questions. Some questions pertained to plaintiff's request, but others were wholly unrelated. *Id.* ¶ 21 n.3 (non-responsive questions pertained to Guantanamo Bay, NSA warrantless surveillance, and faith-based discrimination under Title VII); *id.* ¶ 24 ("OIP only marked records, these discrete groupings of questions and answers, as non-responsive where there was a clear and distinct break in content and where the content on one side of the break was responsive to Plaintiff's request and the content on the other side was wholly unresponsive."). In the second attachment, while all of the questions were from Senator Sessions, again, the questions were distinct from one other. Finally, the last letter and its attachment transmit QFRs from multiple congressmen to DOJ. Again, the questions are separated by member, and they cover a number of topics. Some questions within each congressman's list were redacted as non-responsive.

The QFR and the response to it together make up one record, because much like an email that is sent in reply, the response to a QFR incorporates the question, and together the two form a

unified exchange. Within that unified exchange may be a sub-question, because a sub-question naturally pertains to the question in which it is embraced. Defendant's definition, which separates a sub-question and the response to it as a distinct record, is too narrow. If the umbrella question was disclosed, then logically any sub-questions and their corresponding answers should also be disclosed.

On the other hand, plaintiff's proposed definition of a record as applied here would be unduly broad: it is not necessary to disclose all QFRs and their responses to understand the ones that are responsive to plaintiff's FOIA request; nor are they necessary to provide context or helpful background information. *Id.* ¶ 24; *see Shapiro*, 247 F. Supp. 3d at 74–75 (finding that the FBI could locate responsive pages in a report, memorandum, or manual compiling multiple, unrelated topics, and include additional pages as necessary to provide context, while redacting other non-responsive information); *Cf. Brady Ctr. to Prevent Gun Violence v. U.S. Dep't of Justice*, 410 F. Supp. 3d 225, 236–37 (D.D.C. 2019) (finding that attachments to a responsive email could be considered a separate record where an email contained multiple attachments, the content of the attachment was not directly referenced in the body of the email, and the attachments did not contain any information "even slightly related" to the request at issue).

The definition of a record to include a question – with all of its component parts – and the answer to the entire question comports with *AILA* as well. In that case, the Court of Appeals expressly contemplated that agencies may define a record in response to a FOIA request and that documents that encompass a number of different topics may be divided into discrete "records." *AILA*, 830 F.3d at 678 (noting that in the 1995 version of OIP's FOIA Guidance "addresses the issue of documents that cover multiple, unrelated topics" and "sets forth a number of considerations for agencies to take into account when determining whether it is appropriate to

divide up a document into discrete 'records'"). It is true that the Circuit Court was skeptical that a single sentence within a paragraph of an email message could be considered a separate "record" that would permit its withholding, *id.* at 679, but here, the definition approved does not parse the documents so narrowly. Each "record" here is separated by numbers and space breaks. The non-responsive information was not interwoven within the text of otherwise responsive information – rather, the non-responsive "records" were discrete units that are easily distinguished from one another as distinct groupings of information.

Therefore, the Court will grant defendant's motion insofar as it sought a judgment that its decision to divide QFR documents into discrete records consisting of individual questions and their answers was lawful, but it will deny defendant's motion insofar as it sought the Court's approval of treating a sub-question and its answer as a discrete record. And the Court will also deny plaintiff's motion insofar as it sought a judgment that the agency could not subdivide the documents at all, and that it was entitled to the entire, unredacted documents, but it will grant plaintiff's motion insofar as it objected to the excision of subparts from individual questions. Consistent with the holding and reasoning above, defendant must produce to plaintiff any portions of records consisting of subparts of questions and their answers which were withheld as non-responsive. *See* Ex. 3 to Compl. at 10 (the two paragraphs above question #2 are redacted as non-responsive, even though they seem to be a part of the response to question #1, which has been disclosed); *id.* at 17 (the paragraph above question #31 is redacted as non-responsive, even though it seems to be part of the response to question #30, which has been disclosed).

## II. The Court does not have jurisdiction to review Claim 2.

Plaintiff's second claim alleges that DOJ maintains a policy, as memorialized in the OIP Guidance, that violates FOIA. Compl. ¶ 46. Plaintiff asserts that the policy "is likely to impair

[its] lawful access to information in the future," *id.*, because it "currently has many FOIA requests pending with the DOJ at various stages of the administrative process or that are the subject of ongoing litigation." Pl.'s Cross-Mot. at 26.

The D.C. Circuit has recognized that when "an agency's non-compliance shifts from a singular instance to a 'policy or practice [to] impair the party's lawful access to information,' . . . a court can order broader equitable relief." *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018), quoting *Payne Enter., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). In *Payne*, the plaintiff was in the business of selling information about government contracts to prospective contractors, and he obtained that information through FOIA requests. 837 F.2d at 488. He submitted a request to the Air Force Logistics Command ("AFLC") bases seeking contract bid abstracts. *Id*. The agency refused to produce them under FOIA Exemptions 4 and 5, citing an internal policy letter stating that disclosing bid abstracts would prejudice the government's interests. *Id.* Plaintiff appealed the decision to the Secretary of the Air Force, who determined that the claimed exemptions did not apply, and the materials could be released because the information would not necessarily prejudice the government. *Id.* at 494. In subsequent FOIA requests for additional bid abstracts, the AFLC continued to withhold the documents citing the same policy letter, forcing plaintiff to make repeated appeals to the Secretary, who would subsequently release them. *Id.* at 488. As the Court of Appeals noted, the process was "frustrating, costly, and detrimental to Payne's business." *Id.* at 490. Plaintiff sought declaratory and injunctive relief in federal court, but his case was dismissed as moot because the agency had

16

eventually turned over the records plaintiff requested. *Id.* On appeal, the D.C. Circuit reversed the lower court. *Id.* at 494.

The Court of Appeals started with the general proposition that "once all requested records are surrendered, federal courts have no further statutory function to perform. . . . A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III . . . ." *Id.* at 490–91. Nevertheless, the Court found that while "a party may have obtained relief as to a specific request under FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future." *Id.* at 491 (emphasis omitted). Where an agency is "following an 'impermissible practice' in evaluating FOIA requests," and a plaintiff "will suffer 'continuing injury due to [that] practice,'" the Court stated, a plaintiff's challenge is not moot. *Id.* In addition, the Court held that "FOIA imposes no limits on courts' equitable powers in enforcing its terms," *id.* at 494, suggesting that the district court had the authority to enjoin the agency to cease its unlawful practice. *See id.* at 495.

But significantly, in *Payne*, it was beyond dispute that the plaintiff had suffered a concrete injury, and the Court's conclusion that the claim was not moot was premised on the plaintiff demonstrating a likelihood of continuing injury in the future. *Id.* at 491. Here, the Court has largely upheld the agency's application of its own policy; it took issue with just one specific aspect of the agency's subdivision of documents into records. And, while plaintiff has conclusorily alleged that it may be harmed by the invocation of the OIP policy in the future, it has not alleged facts to demonstrate that it will suffer an injury-in-fact, that is "an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), quoting *Lujan v. Defenders*

17

*of Wildlife*, 504 U.S. 555, 560 (1992). For an injury to be "imminent," the "threatened injury must be certainly impending to constitute an injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007) (the injury must be "certainly impending and immediate – not remote, speculative, conjectural, or hypothetical"). Any possibility that OIP's Guidance on what is a "record" might result in the unlawful withholding of information in future FOIA requests that plaintiff has submitted is speculative given the fact-specific nature of the inquiry.

Furthermore, the plaintiff in *Payne* had demonstrated that the agency was unlawfully withholding records from him, based on the same policy, on multiple occasions. He had suffered from the repeated harm of having to go through the administrative appeals process, only to receive documents that should have been disclosed to him in the first instance. Here, while plaintiff has asserted that agencies have withheld information as non-responsive in prior cases, it has not demonstrated that the agency has been withholding information that it should be disclosing because of OIP's Guidance, and that the agency will continue to do so. Indeed, in this case, the Court found that defendant appropriately withheld information as non-responsive records.

Finally, the Court has resolved the controversy pending before it without reference or application of OIP's Guidance. Thus, the Court need not take up the lawfulness of the policy as a general matter. If the Court were to do so, it would essentially be issuing an advisory opinion about the relationship of the Privacy Act to the Freedom of Information Act, and the similarities

or differences between the meaning of the word "record" in each context.  This does not present a case or controversy suitable for the exercise of Article III jurisdiction.  *See* Fed. R. Civ. P. 12(h).

Because "generalized grievance" cannot confer standing, *Warth v. Seldin*, 422 U.S. 490, 499 (1975), the Court finds that plaintiff does not have standing to bring Claim 2, and thus it will dismiss the claim for lack of subject matter jurisdiction.

## CONCLUSION

With regards to Claim 1, defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment are each granted in part and denied in part.  With regards to Claim 2, the Court finds that plaintiff does not have standing to bring the claim, and it will dismiss it for lack of subject matter jurisdiction.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: April 6, 2020